UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00625-MOC
(3:16-cr-00221-MOC-DCK-1)

| | |
|---|---|
| ROBERT LESLIE STENCIL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, [CV Doc. 1],[1] and Petitioner's "Addendums" and "Amended Addendum" to his motion to vacate, [CV Docs. 2, 3, 4].

I.  **BACKGROUND**

Petitioner Robert Leslie Stencil ("Petitioner") founded Niyato, an alternative fuel company, in 2012 purportedly to manufacture and sell alternative fuel vehicles. United States v. Stencil, 859 Fed. App'x 654, 656 (4th Cir. 2021). Petitioner was the Chief Executive Officer of Niyato. To raise capital for Niyato, Petitioner partnered with co-Defendant Michael Duke. Id. Petitioner advertised that Niyato was based out of Charlotte, North Carolina; "that it manufactured electric vehicles; had a contract with General American Liquified Natural Gas; had patented technology; had contracts to establish fuel stations across the country; and was on the verge of

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:22-cv-00625-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:16-cr-00221-MOC-DCK-1.

going public, among other things." Id. The company, however, "did not have an actual headquarters, did not have any contracts to produce vehicles or even the capability to do so, and was not on the verge of going public." Id.

Through his partnership with Duke, Petitioner recruited other employees, many of whom became co-conspirators in this case, to sell stock in Niyato. The salespeople, using a sales pitch made by Petitioner, called potential investors and informed them that Niyato stock could be purchased for $0.50 per share and would be worth between $5 and $8 once the company went public. Despite that the company never went public, the salespeople continued to use this pitch repeatedly for years. And, on several occasions, the salespeople contacted victims who had already bought shares to entice them to purchase more. Id.

Niyato's legal counsel advised Petitioner that the company must include in its Private Placement Memorandum how it intended to use the money it received from selling socks, and specifically, that the profits from the stocks were split evenly between the company and the seller." Id. Petitioner, nonetheless, advertised that 97.1% of the money invested went back to the company, when in reality the salespeople were receiving 50% commission. Id.

On August 18, 2016, a grand jury indicted Petitioner and two co-conspirators in a 20-count Indictment. [CR Doc. 1: Bill of Indictment]. On October 18, 2017, Petitioner and nine co-conspirators, including Duke, were charged in a 38-count Superseding Indictment for various fraud and money laundering crimes. [CR Doc. 45: Superseding Indictment]. For his part, Petitioner was charged in 34 of the 38 counts, including conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count One); fourteen counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts Two through Fifteen); fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Sixteen through Twenty-Nine); and five counts of money laundering, in violation of

2

18 U.S.C. § 1957(a) (Counts Thirty through Thirty-Four). Petitioner elected to proceed to trial and was tried alongside Duke.[2] After a three and a half-week trial, a jury found Petitioner guilty on all 31 counts presented to it.[3]

Petitioner was sentenced to a term of imprisonment of 135 months. [CR Doc. 456: Judgment]. Petitioner appealed, arguing that this Court erred by declining to grant his motion to sever his trial from Duke's because the two Defendants presented antagonistic defenses and that the Court erred in applying the vulnerable victim enhancement. Stencil, 859 Fed. App'x at 655. The Fourth Circuit affirmed the conviction and sentence, holding, in part, that this Court did not err because Petitioner and Duke did not present antagonistic defenses and that Petitioner failed to show that he was prejudiced by the joint trial. Id. at 661. The Supreme Court denied Petitioner's petition for writ of certiorari, 142 S.Ct. 518 (2021), and Petitioner timely filed the instant motion to vacate, [CV Docs. 1, 1-2].

In his motion, Petitioner asserts a laundry list of claims he contends reflect ineffective assistance of trial and sentencing counsel and errors by the Court and the Government. [See CV Doc. 1]. By way of summary, Petitioner claims his trial attorney was constitutionally deficient because his attorney (1) failed to argue "critical issues" and prepare for trial; (2) failed to obtain expert testimony regarding commission rates and various other issues; (3) failed to object to comments by the Judge and prosecution that made Petitioner "look like a fraud;" (4) failed to object to any of Duke's testimony and other objectionable evidence; (5) failed to object to Duke's

---

[2] Ludmilla Stencil, Petitioner's wife, was also tried alongside Petitioner and Duke. She was acquitted of all charges. [See CR Doc. 338: Jury Verdict]. Six of the remaining co-Defendants pleaded guilty and one was dismissed on the Government's unopposed motion. [See CR Docs. 37, 136, 138, 145, 193, 194, 297, 599].

[3] The Court dismissed Counts Seven, Twenty-Two, and Thirty-Two. [1/7/2019 & 1/18/2019 Docket Entries]. The jury found Duke guilty of three of 13 mail fraud charges, one of 13 wire fraud charges, and one of four money laundering charges. [CR Doc. 338].

3

counsel's leading questions, allowing in "sweepstake scam statements" and other evidence unrelated to Petitioner; and (6) failed to object to the Court's decision to "refus[e] to permit sufficient time to allow approximately 10 witnesses" that would have rebutted the prosecution's central theme that Petitioner's goal was to defraud investors. Petitioner also claims that his trial and sentencing attorneys were ineffective for failing to contemporaneously object to evidence that would have been inadmissible had the trial been severed.[4] [Id.].

Petitioner asserts that the prosecution failed to disclose certain Brady evidence, copies of which Petitioner provides with his motion to vacate. [CV Doc. 1 at 18-40]. Petitioner also claims that, had the Government not seized $413,000 from Petitioner's company, it would not have collapsed.[5] Petitioner wants the Court to account for this money "in cash" and put the money in trust pending the outcome of a new trial. [CV Doc. 1 at 18].

Petitioner contends that the Court (1) erred in applying an unconstitutional test to determine severance and should have applied an objective standard; (2) erred by allowing Petitioner to be tried "in a sweepstake scam," when Petitioner was "clearly in the natural gas alternative fuel industry[ ] and vehicle conversion business; and (3) "overlooked the ethics rules of trying [a] case where a government employee has a financial [interest] in a competing industry," that is, the "Oil and Gas (Energy) Automotive transportation industry." [Id. at 11, 13, 16]

For relief, Petitioner asks that his conviction and sentence be overturned and for an evidentiary hearing. [CV Doc. 1 at 43]. Although Petitioner references a new trial relative to his

---

[4] In Plaintiff's untimely "Addendums" and "Amended Addendum" to his motion to vacate, Plaintiff also claims that his attorneys were ineffective for failing to object to the Court's subject matter jurisdiction over Petitioner's offense of conviction or to move to dismiss on this ground under Federal Rule of Criminal Procedure 12(b). [CV Docs. 2, 3, 4]. Even if Plaintiff had timely moved to amend his motion to vacate to assert this claim, it is meritless and will be dismissed.

[5] On June 10, 2019, the Court granted the Government's motion for a $463,221 money judgment and preliminary order of forfeiture. [Docs. 384, 385].

4

claim regarding the seized $413,000, he does not specifically request a new trial. [See id.]. Petitioner also asks the Court to appoint "a constitutional attorney" and to grant Petitioner bond pending its ruling on this motion. [Id.].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364,

5

Case 3:22-cv-00625-MOC   Document 5   Filed 05/08/23   Page 5 of 10

369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U.S. 15, 27, 130 S.Ct. 383, 390 (2009) (per curiam); Strickland, 466 U.S.[ ] at 693, 104 S.Ct. 2052. Instead, Strickland asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S.Ct. 2052. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not-standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S.Ct. 2052. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S.Ct. 2052.

Harrington v. Richter, 562 U.S. 86, 111-12, 131 S.Ct. 770 (2011). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The Court declines to individually address each of Petitioner's ineffective assistance claims because he has wholly failed to show that he suffered prejudice from the alleged deficiencies. At best and at most, Petitioner states that his attorney "should have hired an expert witness, and by hiring the expert witness that alone would have changed the outcome of the trial," "shown the true worth of the companies," and "rebut[ted] the severely [*sic*] damaging testimony reguarding [*sic*] 50% commission." [CV Doc. 1 at 10]. Petitioner claims that an expert would have explained that a 50% commission was common in the industry and not unlawful. [Id. at 11].

"When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require 'a specific proffer … as to what an expert witness would have testified." Vandross v. Stirling, 986 F.3d 442, 452 (4th Cir. 2021)

6

(quoting Goins v. Warden, Perry Corr. Inst., 576 Fed. App'x 167, 173 (4th Cir. 2014) (per curiam). "A petitioner's failure to do so 'reduces any claim of prejudice *to mere speculation* and is fatal to his claim.'" Id. (quoting id.); see also Bassette v. Thompson, 915 F.2d 932, 940 ("The great failing of the appellant on his claim that other evidence should have been presented during the sentencing phase of his trial is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called."). Here, Petitioner provides only vague and unsupported claims of what an expert could or would have testified to. This is plainly insufficient to show prejudice. See Sexton, 163 F.3d at 882; see Vandross, 986 F.3d at 452.

Because Petitioner has not shown prejudice relative to any claim of ineffective assistance of counsel, the Court will dismiss these claims.

## B. Brady Evidence

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). "Therefore, a Brady violation contains three elements: the evidence was (1) favorable to the accused, (2) suppressed by the government, and (3) material to the verdict at trial." Nicolas v. Attorney Gen. of Md., 820 F.3d 124, 129 (4th Cir. 2016). "Both information that undermines the prosecution's case and information that supports the defendant's case constitute Brady material that must be disclosed." Id.

Absent a showing of cause and prejudice, Brady claims are procedurally defaulted when not raised on direct appeal. Walker v. Kelly, 589 F.3d 127, 137-38 (4th Cir. 2009). Thus, Petitioner here has procedurally defaulted this claim. The claim lacks merit in any event. Petitioner asserts that the "[p]rosecution failed to disclose exculpatory evidence material to the [Petitioner's] defense

7

in direct violation of Brady." [CV Doc. 1 at 18]. Petitioner then proceeds to list and provide copies of the allegedly withheld evidence. [Id. at 19-40]. Petitioner fails to explain how the evidence is favorable to him, fails to show that the Government suppressed the evidence, and fails to show that it was material to the verdict at trial. Rather, Petitioner seems to have ready access to the attached documents and provides no context or explanation of their relevance or import. The Court will also dismiss this claim.

### C. Severance Standard

Petitioner claims that the Court should have applied an objective standard to determine the severance issue. That is, the Court should have considered whether "witness statements and other evidence that reached the jury's consideration in the [Petitioner's] trial [would] have been inadmissible" if Petitioner had been tried separately from Duke. If so, Petitioner contends that the jury would have found him "not guilty" of this otherwise inadmissible evidence. [CV Doc. 1 at 13]. Petitioner's claim on this issue is barred. The Fourth Circuit held on direct appeal that the Court did not err in denying Petitioner's motion to sever. See United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009) (recognizing that a petitioner may not circumvent a ruling on direct appeal by relitigating the issue on collateral review). Petitioner's claim on this issue lacks merit in any event. Petitioner provides no support for the "objective standard" he proposes, and, as already established, the Court properly denied Petitioner's motion to sever his trial from Duke's. This claim, therefore, will also be dismissed.

### D. Petitioner's Other Claims

Petitioner claims that the Court erred in allowing Petitioner to be "tried in a sweepstake scam" and by "overlook[ing] ethics rules … where a government employee has a financial [interest] in a competing industry." These vague and conclusory assertions on these issues are

8

completely insufficient to establish a right to relief under § 2255. They will be dismissed on this ground alone. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Finally, Petitioner's request that the Court put $413,000 in trust pending the outcome of this proceeding is moot given the dismissal of this action.

The Court denies Petitioner's request for an evidentiary hearing because the Petitioner's submissions conclusively show that he is not entitled to relief, see Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970), and denies his request for counsel and bond as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

9

Case 3:22-cv-00625-MOC   Document 5   Filed 05/08/23   Page 9 of 10

**IT IS SO ORDERED**.

Signed: May 8, 2023

Max O. Cogburn Jr
United States District Judge